***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction over the parties and of the subject matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. An employment relationship existed between plaintiff and defendant prior to and on June 3, 1994.
5. Gates McDonald is the administrator for defendant's workers' compensation claims.
6. Plaintiff's average weekly wage as of June 3, 1994 was $553.19, which yields a compensation rate of $368.79.
7. Plaintiff sustained an admittedly compensable injury by accident to her back on June 3, 1994. However, there is a dispute as to whether plaintiff's alleged neck injury is also compensable.
8. As a result of her compensable back injury of June 3, 1994, plaintiff has been paid temporary total and temporary partial disability benefits as appropriate.
9. Plaintiff has elected compensation for her permanent partial disability under the schedule of injuries set forth in N.C. Gen. Stat. § 97-31.
10. In addition to the deposition transcripts and any exhibits attached thereto, the parties stipulated into evidence in this matter a packet of medical records that consists of tabs 1-11. Defendant introduced at hearing and Deputy Commissioner Pfeiffer admitted exhibit number 3, which consists of defendant's answers to plaintiff's interrogatories.
11. The following are the issues to be determined by the Full Commission: what permanent partial disability rating should be assigned to plaintiff's injury or injuries; and whether plaintiff sustained a compensable neck injury in addition to her compensable back injury.
12. The depositions of Dr. James Page Aplington, Dr. Al Bartko, Dr. Robert W. Elkins, Dr. William D. McKeown, and Dr. Mark W. Roy are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was fifty-two (52) years old. Plaintiff has a high school diploma and has taken various training courses; however, she does not have any advanced degrees. Plaintiff, who has been employed by defendant for over twenty years, remained employed and was working for defendant as of the date of the deputy commissioner hearing in this matter.
2. On June 3, 1994 plaintiff sustained an admittedly compensable injury by accident to her low back when she lifted and moved boxes in her office. Plaintiff first sought medical treatment for complaints of low back and left leg pain from her family doctor, internist Dr. William McKeown, who referred her to Dr. James Aplington, an orthopedic surgeon.
3. An MRI revealed that plaintiff had a large left-sided herniated disc at L4-5 and a lateral disc herniation at L3-4 in addition to significant preexisting degenerative changes in her low back. Dr. Aplington performed a two level laminectomy at L3-4 and L4-5 on August 10, 1994.
4. Plaintiff seemed to obtain good results from the surgery and made steady progress for several months thereafter. However, in November 1994 plaintiff began experiencing right-sided symptoms with pain in her right low back and into her right leg. Ultimately a repeat MRI was done which revealed plaintiff had no recurrent herniated disc.
5. Although Dr. Aplington did not rate plaintiff's permanent partial impairment during the course of his treatment of her, he opined in his deposition testimony that he would assign a permanent partial disability rating to plaintiff's lumbar spine between 15 and 20 percent, or 17.5%.
6. On February 24, 1995, plaintiff reported to Dr. McKeown that she was having neck pains with rotation, as well as left shoulder pain that radiated down her arm into her elbow. On February 28, 1995, plaintiff reported to Dr. Aplington the same symptoms. At this time, Dr. Aplington noted that there was "no known injury" that precipitated plaintiff's neck and left lower extremity pain; however, when Dr. Aplington saw plaintiff again on March 9, 1995, she indicated to him the possibility that her neck and shoulder pain was precipitated by her participation in physical therapy. The physical therapy notes from Moses H. Cone Outpatient Rehabilitation Center from the end of February 1995 corroborate that plaintiff complained to her therapist of severe upper back pain with radiation down her arm.
7. Physical therapy notes from Moses Cone also indicate that plaintiff reported that on April 19, 1995 she fell in the shower and hit her head. Plaintiff reported that this fall exacerbated her cervical and low back pain with radicular symptoms.
8. On May 8, 1995 plaintiff was first seen by Dr. Mark Roy, a neurosurgeon. According to Dr. Roy's notes, plaintiff reported that she developed neck and shoulder pain during physical therapy. Dr. Roy ordered an MRI which revealed a herniated disc at C5-6. Dr. Roy performed an anterior cervical discectomy and fusion at C5-6 on June 2, 1995. Plaintiff did well after the surgery and a subsequent cervical MRI that, according to Dr. Roy, "looked great."
9. Dr. Roy continued to treat plaintiff for a number of years thereafter, and on January 22, 1997 he expressed concerns that plaintiff was a hypochondriac. At this point, Dr. Roy felt there was nothing more he could do for plaintiff, that there was no more testing or treatment (specifically, acupuncture) necessary, and he released her from his care. Dr. Roy does not question the genuineness of plaintiff's pain complaints; however, he is of the opinion that plaintiff's reaction to her pain is possibly more extreme than that experienced by other patients.
10. Notwithstanding Dr. Roy's release of plaintiff, he did thereafter see plaintiff for several more years. Dr. Roy has assigned permanent partial impairment ratings of 20% to plaintiff's lumbar spine, and 25% to plaintiff's cervical spine. In assigning the 20% rating to the lumbar spine, Dr. Roy took into account that two levels were surgically treated as opposed to just one. Regarding the cervical spine rating, Dr. Roy explained that he used an old Industrial Commission rating guide to come to this figure, as the newer Industrial Commission rating guidelines do not differentiate between discectomies and fusions, which are functionally and biomechanically different, and it also does not account for radicular pain. Dr. Roy further explained that the 25% rating of the cervical spine takes into account that plaintiff underwent a discectomy plus a fusion, and also takes into account plaintiff's persistent pain, including her radicular symptoms. Were he pressed to do so, Dr. Roy would assign the maximum 15% rating set forth in the newer Industrial Commission rating guidelines; however, he does not feel, for the reasons stated herein, that a 15% rating would be adequate in plaintiff's case.
11. Plaintiff was also seen and treated for a period of time by Dr. Al Bartko, a physical medicine and rehabilitation physician, for pain control measures for plaintiff's nonsurgical problems. Dr. Bartko diagnosed plaintiff with myofascial pain syndrome (fibromyalgia) of the shoulders. Dr. Bartko did not feel additional testing, referrals, physical therapy, or acupuncture were warranted. Instead, Dr. Bartko opined that the only thing that would provide a cure for plaintiff over time would be a sustained exercise program. Dr. Bartko also indicated that while massage therapy would not provide a cure for plaintiff's problem, he was willing to approve a short additional course, as long as it gave plaintiff functional results.
12. As of February 4, 1997, Dr. Bartko felt that plaintiff was at maximum medical improvement, and he assigned a 10% permanent partial impairment rating to plaintiff's low back, and a 15% permanent partial impairment rating to plaintiff's cervical spine. However, Dr. Bartko was willing to defer to the opinions of the physicians who performed the surgeries on plaintiff with respect to the appropriate impairment ratings.
13. On October 13, 1998, plaintiff was evaluated in a second opinion evaluation by Dr. Robert Elkins. Dr. Elkins, as a result of his examination of plaintiff and his review of her medical records, assigned permanent partial impairment ratings of 10% to plaintiff's lumbar spine and 10% to plaintiff's cervical spine. Dr. Elkins could not state within a reasonable medical probability that plaintiff's herniated cervical disc was related to her lumbar spine injury.
14. Plaintiff returned to work for defendant in a part-time capacity in June 1996. Plaintiff worked on a graduated schedule of four-hour workdays for several months, increasing to six-hour days, and then progressing to a full eight-hour day. Plaintiff remains employed by defendant as a result of defendant's extraordinary accommodations with respect to her ability to return to work.
15. Defendant has provided all medical compensation relating both to plaintiff's lumbar and cervical spine injuries. Defendant also paid disability compensation for plaintiff's admittedly compensable lumbar injury; however, defendant has paid no disability compensation for plaintiff's cervical spine injury as she was already receiving temporary total disability compensation for her lumbar injury at the time of her disability related to her cervical spine injury.
16. Defendant contends that plaintiff's cervical spine injury is unrelated to her admittedly compensable lumbar spine injury. However, defendant never formally denied plaintiff's cervical spine injury either by way of filing a Form 61 or any other method.
17. Both Drs. Aplington and Roy, plaintiff's treating physicians for her lumbar and cervical spine injuries, respectively, have testified in opinions that are deemed credible and are accepted herein that there probably was a causal connection between plaintiff's participation in physical therapy and her C5-6 disc herniation. While Dr. Aplington initially noted that there was "no known injury" to account for plaintiff's newly-developed neck and radicular pain, shortly thereafter she reported to him that these complaints developed as a result of "stressful" physical therapy. Moreover, the physical therapy notes corroborate that during her therapy, plaintiff complained of neck and arm pain. Plaintiff has been consistent in reporting to other physicians and at the hearing that her neck problems developed after participating in physical therapy.
18. Although plaintiff fell, probably due to well-documented muscle weakness in her legs as a result of the compensable lumbar injury, when getting out of the shower in April 1995 and hit her head, thereby exacerbating her neck complaints, it is significant that plaintiff's neck and arm pain had already developed close to two months prior. This fall while getting out of the shower could have actually caused plaintiff's cervical spine problems, although Dr. Roy testified in an opinion that is deemed credible and is accepted herein that the fall probably aggravated rather than caused the cervical spine condition.
19. Plaintiff's cervical spine injury, occasioned by her participation in stressful physical therapy and exacerbated by a fall in the shower, was a natural and probable consequence flowing from her initial compensable lumbar spine injury.
20. The Full Commission has taken into equal consideration all relevant physician's opinions regarding plaintiff's permanent partial disability ratings for her cervical and lumbar spine.
21. Averaging the permanent partial disability ratings of plaintiff's physicians, plaintiff has been assigned a 16.67% permanent partial impairment rating for her cervical spine.
22. Averaging the permanent partial impairment ratings of plaintiff's physicians, plaintiff has been assigned a 14.38% permanent partial impairment rating for her lumbar spine.
23. The North Carolina Industrial Commission Medical Fee Schedule prescribes that these cervical and lumbar spine ratings be combined to determine plaintiff's permanent impairment rating for her back. Employing the appropriate calculation method required by the Rating Guide, plaintiff has a 28.65% permanent partial impairment rating for her back.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment to her lumbar spine on June 3, 1994. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable lumbar and cervical spine injuries, plaintiff was temporarily totally disabled through on or about June 24, 1996, and she has already received appropriate indemnity compensation for this two-year period of time. N.C. Gen. Stat. § 97-29.
3. Plaintiff also received appropriate periods of temporary partial disability benefits upon her return to work at reduced hours. N.C. Gen. Stat. § 97-30.
4. As a result of her compensable lumbar and cervical spine injuries, plaintiff received medical treatment that was reasonably necessary to effect a cure, give relief, or lessen the period of her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Plaintiff has elected to be compensated for her permanent partial disability pursuant to the schedule of injuries set forth in N.C. Gen. Stat. § 97-31. Plaintiff has retained a 28.65% permanent partial impairment rating to her spine. N.C. Gen. Stat. § 97-31(23).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms in part and reverses in part the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay to plaintiff
85.95 weeks of permanent partial disability compensation benefits at the weekly rate of $368.79 in compensation for her compensable spine injury.
2. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation awarded herein to plaintiff. Accordingly, defendant shall deduct one-fourth of the total amount owed to plaintiff, and shall forward that amount directly to plaintiff's counsel.
3. Defendant shall pay the costs due the Commission.
This the ___ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER